*LAFON'S EXECUTORS* vs. *PHILLIPS & AL.*

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. The petitioners state, that in the year 1810, their testator instituted a suit against Madame Riviere, executrix of the late J. B. Riviere, in order to recover of her, the balance due for the building of a certain house, situated at the corners of Bienville and Levee streets, and that an action was commenced by the said Madame Riviere, against the said Lafon, for damages: which suits were consolidated, and a final judgment rendered thereon, on the 14th of April, 1823, for the sum of $3389 78-100—that the house, the building of which, occasioned these actions, is now in the possession, and is the property of the defendants, and being subject to the original privilege granted by law, to the builder, must be

*The purchaser of the land of an estate, under the directions of a court of probates, acquires it free from incumbrances.*

*Any irregularity in the sale, must be complained of, before the homologation of the curator's account.*

East'n District.
*March*, 1824.

LAFON'S EX'RS.
*vs.*
PHILLIPS & AL.

abandoned by them, and sold, in order to satisfy the judgment already stated, unless they prefer paying the debt, with interest and costs.

The answer, and exceptions, set up the following defence, to the demand:

1. That the authority of the plaintiffs has long since expired, and the suit should have been instituted in the name of the heirs.

2. The facts set forth, in the petition, are untrue.

3. From the records of the suits, to which the plaintiffs allude in their petition, it appears it was for the building of two houses, that Lafon contracted with Riviere, and not of one, and that recovery cannot be had, against the defendants, for the sum due for building a house that is now owned by another and third party.

4. Many years after the building of the houses already alluded to, Riviere became insolvent, and surrendered his property to his creditors: syndics were appointed according to law, and the property now claimed, was sold by them, and the proceeds arising from said sale, regularly paid over to the persons duly entitled to receive them, under a decree of the court. The widow of Riviere, his ex-

ecutrix, filed an account of her administration in the court of probates, when the same after the usual proceedings was duly homologated, and no opposition made thereto, by the petitioners. In consequence of which, it is averred they have lost their lien, and cannot sustain the present action.

5. The defendants were not parties to the judgment, and are not bound by it.

6. One thousand dollars more than the sum actually due the testator of the plaintiffs, was received from the negligence of the defendant, in the original suit, in not proving the handwriting of Lafon, to a receipt for that sum—and;

7. In the judgment referred to in the petition, costs are included, for which no lien exists on the building owned by them.

A supplemental answer was subsequently put in, which contained,

1. An allegation that the claim of the petitioners, was not a privileged one—and

2. If so, it was barred by prescription.

We have formed an opinion on one of these exceptions, which is the fourth in the order just stated, which renders it unnecessary to examine the rest. It was that on which the judge decided the cause in the court below,

East'n District.
March, 1824.

LAFON'S EXR'S.
vs.
PHILLIPS & AL.

and in our opinion correctly. Before entering on the principal question which it presents, we have to notice a bill of exceptions, taken by the defendants, to the introduction of the documents offered by the plaintiffs in support of this part of the case. The grounds relied on here, in support of this objection, are, that by the answer, it is averred, that the property in question, was sold by the syndics, and that the evidence offered, shews it to have been disposed of by the executrix. On recurring to the answer, we find that it was incorrectly drawn up, without an exact knowledge of all the facts in the case; enough, however, is stated, to shew the judge decided correctly, in admitting in evidence, the papers objected to. The answer avers the insolvency of Riviere in his life time, subsequent to the building of these houses—that he surrendered them, with his other property, to his creditors, and that they were sold by his syndics. It goes on, however, to state, that the executrix filed also an account of her administration in the court of probates, which, after the usual proceedings being had, was duly approved and homologated—that by this account, the estate of the deceased appears to have been insolvent, and

that the plaintiffs, by suffering the accounts of the syndics and the executrix to be sanctioned by the court, without making opposition to either, had lost their lien on the property. Under this last branch of the answer, we think all the proceedings in the court of probates were legal evidence in the cause, and that if they furnish a proper defence to the action, we must give them effect.

This brings us to the principal question in the cause----the effect of the sale by the court of probates. It is contended by the defendants, that this sale freed the property from the mortgages existing on it, and that the creditor should have pursued his lien on the proceeds, in the hands of the executrix.

On reference to the provisions of our code, which point out the step to be pursued by executors, who are ordered by the will, to sell the property of the deceased, and pay his debts, we find that they are directed to proceed in the manner prescribed to the curators of vacant successions. It therefore follows, that if a sale by them, under the authority of the court of probates, would have the effect contended for in this case, the same consequence will ensue, as that made by an executor. *Civil Code,* 246, *art.* 174.

East'n District.
*March,* 1824.

LAFON'S EX'RS.
*vs.*
PHILLIPS & AL.

According to the rules, established by the legislature, in relation to vacant estates, it is made the duty of the curator, immediately after the inventory is completed, to cause all the moveable and immoveable property to be publicly sold. This provision, of course, embraces that part of the estate on which mortgages or privileges exist; for, it speaks of *all* the property, without any exception. If, however, it stood alone without any thing else, which indicated the legislative will on the subject, it might be a matter of doubt whether the property so affected, was not to be sold, subject to the liens, which the owner before his decease, might have subjected it to. But a consideration of other provisions of the code, satisfies us, that such was not the intention of the law-maker, and this we think clearly results, as well from a general view of the system which has been established in relation to the settlement of estates, as from the particular expressions of the law, which will be hereafter noticed.

We had occasion to enter very fully into the subject of the jurisdiction of the court of probates, in the case of *Vignaud* vs. *Tonnacourt,* which will be found reported in 12 *Martin,*

229, many of the reasons on which we came
to the conclusion then, that the court of pro
bates had exclusive jurisdiction of the estates
of deceased persons and their settlement, will
be found to have a strong bearing on the ques-
tion now before ns.    It is evident that the le-
gislature contemplated, and has provided, that
claims against successions should be presen-
ted to one tribunal, and that, if there is not
enough to pay all, they should be liquida-
ted contradictorily by the different creditors,
and their preference settled by the judge.    We,
therefore, concluded, in the case just mention-
ed, that different suits could not be instituted
before tribunals other than the court in whom
the power of making this settlement, was ves-
ted.    This reason operates with great force,
to shew that the purchaser should take the
property free from incumbrance, and the cred-
itor be compelled to inforce his privilege, or
mortgage, on the proceeds in the hands of the
curator.    For, in the contrary hypothesis then,
as it is correctly stated in the opinion of the
court below, the liquidation of a claim on the
estate, and the payment of it, would not be
made under the authority of the court of pro-
bates, and by the curator, but by the creditor,

East'n District.
*March*, 1824.

LAFON'S EX'RS.
*vs.*
PHILLIPS & AL.

and a third party litigating their respective rights before another tribunal.

But there is a particular provision of the code, which we have already attended to, that we think places the correctness of the opinion we entertain, beyond doubt. We allude to the 137*th art. page* 178. It is there declared, that the curators of vacant estates, and absent heirs, shall not proceed to the payment of the debts, until they have previously obtained the authentication of the parish judge, by whom they have been appointed—that, that authentication shall be necessary, even in case there be money enough to discharge all claims on the estate; but should there not be sufficient property to satisfy all demands, it shall be their duty to cause the parish judge to regulate the classes of *privileges* and *mortgages*, and then to establish the rank in which the creditors shall receive their payment.

From the language here used, it results, that the privilege and mortgage creditors, may demand payment out of the proceeds of the sale, in the hands of the curator, and in preference to simple creditors. This preference could have been given, on no other ground, than that they would have had the same right

on the object from which these proceeds originated, or, in other words, that the money represented and stood in place of it. But if we consider, as is contended, the mortgage still to exist, there is no ground whatever, for conferring this advantage on the mortgagee; for the moneys in the hands of the curator, would only be the price that the object sold for, after deducting the sum for which it was hypothecated. Such a construction would lead to great injustice, when considered in another point of view. The creditors, who may enjoy a lien on the estate of the deceased, we have already seen, can claim payment from the curator, out of the proceeds coming from the sale of the property. Now, if in addition to this right, they also retain a lien on the object sold in the hands of a purchaser, then it follows, that they diminish the general fund, out of which, all the debts are to be paid in a sum exactly equal to the amount of their mortgages; as the buyer will, of course, not give more than the value of the thing, over and above the sum for which it is hypothecated—that out of this sum, so diminished, they have a right to be paid in preference to the chirographary creditors, and that the latter have no means of

East'n District.
March, 1824.

LAFON'S EX'RS.
vs.
PHILLIPS & AL.

enforcing the lien, which occasions a total loss of their debt.

We forbear to pursue the subject through the variety of illustrations of which it is susceptible, and we conclude that independent of the result, which a consideration of our whole judicial system, in relation to successions leads to, the right given to mortgage and privilege creditors to be paid out of the proceeds of the sale of the property mortgaged, is totally inconsistent with allowing them to retain a mortgage in the thing sold.

The plaintiffs, however, contends that, admitting the general principle to be as just pronounced, yet, here the sale was irregular, as not being made after the usual advertisements, &c. On this point, we are of opinion that, if the irregularities did exist, the proper time and place to have objected to them was, in the court of probates, when the executrix applied for an homologation of her administration of the estate. The law requires the creditors to present their claims and enforce them before that tribunal. It makes them parties to the proceedings, by a public notice directed to be published in both languages, calling on them to make opposition, if they have any to make, and

it declares that if they do not present them-
selves, they shall thereafter be without any re-
source or remedy.  *Civil Code*, 178, *art.* 138
& 139.

  In opposition to the effect, which we think
the proceedings in the probate court must ne-
cessarily have, we are reminded of a decree
pronounced by this court in the case of *Lafon*
vs. *Riviere*, when judgment was given against
the principal debtor.   But we do not see how
the opinion then expressed at all affects the
case.   The decision of the court then was, that
the defendant was too late in presenting his dil-
atory exception.  Here the third possessors seek
to protect themselves by shewing that from the
nature of the proceedings, in the court of pro-
bates, the property was acquired free from any
lien, and that the plaintiff was by law a party to
the proceedings.  If such was the fact, and we
have seen that it was, then no subsequent con-
sent of the executrix and the creditor to litigate
the points in dispute between them coulddeprive
the purchaser from holding the property on the
condition he acquired it.

  It is therefore ordered, adjudged and de-
creed that the judgmedt of the district court
be affirmed with costs.

East'nDistrict
*March*, 1824.

LAFON'S EXR'S.
*vs.*
PHILLIPS & AL.

*Hennen* for the plaintiffs, *Preston* for the defendants.